THIS IS A SAN FRANCISCO CASE
THAT JUDGE ARMSTRONG ORIGINAL
WRONGLY REVIEWED

FILED
JUN 16 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | Sophia Wong, Plaintiff, being irreparably harmed by homelessness, DIRECTLY CAUSED BY DEFENDANTS to Mailing Address only
2 | is: 1230 Market Street, #731, San Francisco, California 94102;

3 | UNITED STATES DISTRICT COURT

4 | NORTHERN DISTRICT OF CALIFORNIA

Sophia Wong, Plaintiff,
5 | Vs.

*Case No.: C–08–02432 SBA*

OAKLAND!

*(Notation: Defendants #3 thru #30 inclusive are all sued in both*
6 | *their private individual capacities and in their official public*
*capacities and additionally they are all sued as duly authorized*
7 | *agents of Defendant Number 1.) Michael J. Astrue.)*

Plaintiff's ***FOURTH*** EXPARTE MOTION:
MOTION FOR RECONSIDERATION:
OF BOTH ORDERS DOC#3 AND #4

1.) Michael J. Astrue, Commissioner, of Social Security
8 | Administration, (hereinafter "SSA")

*WITH DUE JUDICIAL NOTICE:*
*PLAINTIFF ALSO NOW ADDS 42 U.S.C. §*
*1981;* AND 28 U.S.C. §1988; AND 28 U.S.C. §
1343 to Jurisdiction:

In care of: The United States Attorney's offices, Social
9 | Security Fraud Division, 450 Golden Gate, San Francisco,
California 94102; AND Office of the Attorney General –
10 | Attention Social Security Disputes /Payee Fraud Division,
U.S. Department of Justice, 950 Pennsylvania Avenue,
11 | NW, Washington, District of Columbia 20530–0001;

JURISDICTION PURSUANT TO: THE
SOCIAL SECURITY ACT: 42 U.S.C. § 902(a)5;
AND 42 U.S.C. § 1383 (a)2; AND 42 U.S.C. §

12 | 2.) Conard House, Inc., SSA affiliate member of
representative payment program, main offices: 1385
Mission Street, Suite 200, San Francisco, California

1383 (d)(1), *inter alia;* AND 20 CFR PART 416
SSI, SUBPART F – Representative Payment §§

13 | 94103; known named Defendants listed below:
3.) Richard Heasley, address above in #2;

416.601 TO 416.665 inclusive, especially enforce
§416.641; §416.665; and §416.650, *inter alia;*

14 | 4.) Mark L. Bennett, address above in #2;
5.) Seth Katzmann, address above in #2;

AND THE EQUAL ACCESS TO JUSTICE
ACT: 5 U.S.C. § 504; AND 5 U.S.C. § 554, *inter*

15 | 6.) Carol Kassler, address above in #2;
7.) Carol Vullmahn, address above in #2;

*alia;* AND FOR THE CIVIL RIGHTS
INFRINGEMENTS AND ABUSES PORTIONS

16 | 8.) Supervisor of Conard House, Inc., at branch office
location at 160 Ninth Street Offices, San Francisco,

OF THIS CASE: 42 U.S.C § 1981; AND 42
17 | California 94103, a male whose name is unknown;
9.) Robert, a male Employee at 160 Ninth Street Office;

U.S.C § 1983; AND 42 U.S.C. § 1985; AND 42
18 | 10.–30.) Does, named, unknown persons employed at
various Conard House, Inc. locations;

U.S.C. § 1986; AND 28 U.S.C. § 1988; AND 28
U.S.C. § 1343, *inter alia.*

19 | 31.) Mirian Saez, Interim Director, San Francisco Housing
20 | Authority, (hereinafter SFHA and/or PHA – abbreviation
for Public Housing Authority) 440 Turk Street, San
21 | Francisco, California 94102;

22 | 32.) Director, The South of Market Mental Health Clinic
760 Harrison Street, San Francisco, California 94107;

23 | 33.) Director, The Adult Protective Services of the City
and County of San Francisco, 875 Stevenson St, 3rd Floor,
San Francisco, California 94102;

24 | 34.–50.) DOE(S) defendants, named, unknown persons, of
as yet, unknown connection to this case.

25 | Defendants, Et. Al. *All rights reserved to*
*add additional Plaintiffs and additional Defendants!!*

26 | <u>**VENUE AND JURISDICTION:**</u> Plaintiff seeks SUA SPONTE protection from this Court on an absolute
emergency 24–hour basis: All crimes committed against Plaintiff occurred in San Francisco, California
27 | by mostly State actors, and public and private corporation actors, but also possibly some Federal
Government actors; only a SUA SPONTE Federal Court investigation can determine the actual events
28 | **State court protection is unviable** JURISDICTION: <u>42U.S.C.§1981 § 1983 § 1985 § 1986;</u> AND 28
U.S.C. § 1988; **28 USC § 1343;** 20 CFR PART 416 SSI: SUBPART F – Representative Payment, §§
416.601 TO 416.665 inclusive, especially §416.641; §416.665, and §416.650; and 42U.S.C.§ 902(a)5;
and 42 U.S.C.§1383(a)2; and 42U.S.C.§1383(d)(1), *inter alia.*

<u>**Prima Facie facts showing absolute urgency for the Court to move SUA SPONTE:**</u>

**Plaintiff's FOURTH EXPARTE MOTION: MOTION FOR RECONSIDERATION: OF BOTH ORDERS DOC #3 AND DOC #4.**

1.) Plaintiff believes that the Court should be given an opportunity to correct it's unusual errors!  Plaintiff realizes the Court is extremely busy and thus in a hurry, and so The Court must have in haste just quite simply OVERLOOKED the clear fact that **ALL DOCUMENTS ARE PROPERLY SIGNED, including but not limited to the Plaintiff's APPLICATION to PROCEED In Forma Pauperis (IFP).** THE CLERK OF THE COURT HAS CLEAR STANDING ORDERS FROM ALL JUDGES TO NOT ACCEPT ANY UNSIGNED DOCUMENTS!!! Therefore, This Court is in significant error when The Court alleges in **"ORDER [Docket No. 3]" at Page Number 4 in line Number 5** that somehow the clearly unusual step of DENYING Plaintiff IFP status is because, "The Court has reviewed Wong's Application and found it unsigned." Plaintiffs respectfully suggests that the Court LOOK AGAIN as BOTH the Court ORIGINAL and the Court Courtesy Copy ARE SIGNED.  Almost certainly the Court's Clerk is the one who quickly reviewed the IFP and reported it unsigned to the Court; all that needs to be done is for the Court to look again at page number 4 of the IFP Application!

Now, if the Court looks again at page number 4 of the Application for IFP, clearly, so that the Court could not possibly misunderstand the Plaintiff stated ONLY ON THE IFP that before the Paperwork was served upon the Defendants that the Court must ORDER her Payee case TRANSFERRED to a DIFFERENT PAYEE. ***This is CLEARLY to PROTECT the Innocent Plaintiff!*** The piece of paper making this entirely reasonable request is attached with 2 staples in the upper left corner and a very tiny ¼ inch piece of clear tape to page 4 of the IFP inorder to hold it in place, so that the Court could not possibly ignore the NEED TO PROTECT THE INNOCENT MENTALLY DISABLED PLAINTIFF FROM THE DEFENDANTS BEFORE THIS COURT PROCESS EVER BEGINS simple request, so instead the Court or it's clerk chose to ignore the signature! This piece of paper is attached to the irrelevant question #10 and Plaintiff admits that is obscures MOST BUT NOT ALL of the signature, but all that the Court would need

*SEE EXHIBIT* ⟶

*1*

**DUE JUDICIAL NOTICE:** Since the Court claims to have read the materials submitted under seal – in that submitted material it is ABUNDANTLY clear that the Plaintiff does not have current IDENTIFICATION and had requested payment for new identification from the PAYEE Defendants only to have PAYEE Defendants **NOT PAY for the new identification** – THEREFORE LOGIC DICTATES THAT PLAINTIFF CANNOT PRESENT ID TO A NOTARY PUBLIC *TO VERIFY ANY COMPLAINT!* In the lapsed time that has passed since the month ago this paperwork was first urgently filed, PHA Defendants have WITHOUT FIRST POSITING or SERVING a "Sheriff's NOTICE" BOARDED OVER THE DOORWAY TO THE ONLY ENTRANCE TO PLAINTIFF'S LIFELONG HOME – A HOME PLAINTIFF IS BEING DEFRAUDED OUT OF, WITH THE DELAYS FROM THIS COURT. *IT IS STILL NOT TOO LATE*, but at any time now, the PHA Defendants could remove the board from over the entrance to unit 337, enter and discard all of *PLAINTIFF'S POSSESSIONS*, repaint the apartment, and make it instantly available to rent to anyone else! *THERBY COMPLETING THE CRIMINAL DEFRAUDING OF THE PLAINTIFF OUT OF HER LIFETIME HOME*, because this Court HAS FAILED to move with any ALACRITY!! There is precious little time remaining – *but still enough time* for the Court to:

1.) **CONFISCATE** all records immediately; 2.) **ORDER** the SSA Defendants to find *another Payee* for Plaintiff IMMEDIATELY, WITHIN 24 HOURS of record confiscations; 3.) *ORDER* ALL DEFENDANTS to a hearing to DEMONSTRATE TO THIS COURT WHY they should not have PAID PLAINTIFF'S BACK RENT AND CURRENT RENT FOR THE LAST 17 MONTHS!

Unfortunately the computer hard drive, containing all of the Plaintiff's filings and writings in this case, including but not limited to the Plaintiff's ANSWERS to this Court's erroneous decisions in this case, HAS FAILED. These documents have not yet been recovered, although it is being worked upon, it is not going to be possible to retrieve the paperwork before the deadline to reply imposed by this Court. The enclosed documents ARE ROUGH DRAFTS, printed prior to the complete system failure and as such are very incomplete, but it is the only thing that is currently available. Plaintiff CAN NOT submit the corrected copies of this submission, however, THERE IS ENOUGH INFORMATION contained herein to allow the Court to APPROVE Plaintiff's IN FORMA PAUPERIS APPLICATION – on in the alternative, **PLAINTIFF MOVES THE COURT FOR, AND REQUESTS AN EXTENSION OF TIME TO RETRIVE AND SUBMIT A BETTER WRITTEN RESPONSE FROM THE DAMAGED COMPUTER DRIVE.**

*PLAINTIFF'S EXHIBIT #1*

1  nonw

2  10.  Does the complaint which you are seeking to file raise claims that have been presented in

3  *SHOWING 1 PIECE OF PAPER REQUESTING COURT*

4  *ORDER PLAINTIFF BE ASSIGNED A*

5  *NEW PAYEE OBSCURES SIGNATURE*[n]

6  Additionally, Plaintiff Sophia Wong hereby moves that BEFORE THE COURT serves
this Complaint onto ANY defendants that the Court endeavor to find and replace her a

7  NEW Payee in the SSA Representative Payment Program {other than Defendants #2

8  through #30 Conard House INC.} that will work with mentally disabled persons in the
best interest of the disabled person and then ORDER her case to that person or agency on [t] a

9  an interim basis. This is because immediately upon learning of this action the Defendants
will exert undue influence on Plaintiff Some help may be found from the Payee Division

10  of the Adult Protective Services of the City and County of San Francisco, {415} 557 –
5251 located at 875 Stevenson Street 94103 AND / OR through Mr. Peter D. Spencer,

11  San Francisco, Regional Commissioner, Social Security Administration, office address
and telephone number unknown.

12  DATE                                      SIGNATURE OF APPLICANT

13  *THAT ALL YOU MUST*
*DO IS PUSH IT OUT OF THE WAY!    SIGNATURE SLIGHTLY VISABLE*



at have been presented in

suit(s), and the name of the court in

that the foregoing is true and correct and understand that a
suit in the dismissal of my claims.

DATE                          SIGNATURE OF APPLICANT

*Sophia Wong*

*PIECE OF PAPER*
*REQUESTING COURT*
*ORDER PLAINTIFF BE ASSIGNED A*
*NEW PAYEE REVEALS ENTIRE*
*SIGNATURE*
*AND 5/7/08 DATE!*

14

15

16

SEE EXHIBIT

1   to do is just simply touch the piece of paper in any manner and it would move aside to REVEAL THE

SEE EXHIBIT

SIGNATURE!! This simple tiny additional piece of paper INSERTED ONTO THE PREPRINTED

SEE EXHIBIT

4   COURT FORM request from the Plaintiff IS CLEARLY SO THAT THE COURT KNOWS BEYOND

5   ANY POSSIBILITY OF A DOUBT THAT IT MUST ORDER PLAINTIFF TO A DIFFERENT PAYEE!

6   BEFORE IT BEGINS ANY OTHER PROCESS because once the paperwork is served upon the

7   Defendants THEY WILL ABUSE Plaintiff through the ABSOLUTE TOTAL power they have over her

8   monies. Does the Court FAIL TO UNDERSTAND THAT THE DEFENDANTS HAVE NOT PAID HER

9   RENT IN 15 MONTHS!!??!! So if the Court CLEARLY UNDERSTANDS THAT FRAUD HOW CAN

10

11  IT NOT UNDERSTAND THAT A DEFENDANT SO CRAVEN AS TO DEFRAUD THE PLAINTIFF

12  OUT OF OBVIOUS RENT PAYMENTS INORDER TO CAUSE HER EVICTION WOULD ALSO BE

13  CRAVEN ENOUGH TO SEVERELY MENTALLY AND PHYSICALLY ABUSE THE PLAINTIFF

14  AFTER IT LEARNS OF THIS LAWSUIT THROUGH IN FORMA PAUPERIS SERVICE BY THE

15  UNITED STATES MARSHALS AND FURTHER TO DESTROY OR ALTER ALL EVIDENCE IN

16  THIS CASE.  and Sworn as true and thus Plaintiff would be under threat of Perjury of not true.  Plaintiff

17  CLEARLY asserted, not alleged that us Plaintiff submits the followingreminds this Court THAT THESE

18  ARE CRIMES COMMITTED AGAINST PLAINTIFF NOT JUST mere bad acts.  Plaintiff reminds this

19  Court that Plaintiff is a severely mentally disabled individual who is a member of a specially protected class

20  who must be preserved by this Court.

21  2.) Plaintiff reminds the Court that Plaintiff stated on Page ONE of BOTH the Complaint and the two

22  exparte motions that STATE COURT ACTION IS UNVIABLE!  No matter how far sweeping either

23  Caifornia Superior Court or California APPELATE COURT power might be, it is IMPOSSIBLE for

24  STATE court to seize the files of an agent of the Federal Government.  Defendants Numbered 2 thru #30

25  are agents of the Federal Government.  Even if the State Courts – either Superior or Appellate were to

26  wrongly construe Defendants #2 thru #30 as PRIVATE actors in a private Corparation, the State Court

27

28

COULD NEVER SEIZE the records of anyone IN AN UNLAWFUL DETRAINER ACTION!  The

California STATE Courts – either Superior or Appellate LACK THE POWER AND LACK THE

JURISDICTION TO SEIZE THE VERY FILES THAT PROTECT AND PROVE PLAINTIFF'S CASE

By far the most significant error that the Court makes is located in ORDER Docket No. 4 Page Number 6

Line numbers 26 and 27 wherein the Court states:  When such records are most likely also held by the

SSA"; the Clear fact is that Defendant Number 1 the SSA is so woefully inadequate in it's supervision of

this program that NOT ONLY DOES IT NOT KEEP IT'S OWN RECORDS OF WHAT THE PAYEE

SPENDS BUT IT DOES NOT EVEN ADEQUATELY REQUIRE THE PAYEE TO KEEP THOSE *SEE EXHIBIT*

RECORDS!  This is because most Payee's are friends or family members, common ordinary citizens who

at the very least are "non–professionals" in most fields, and certainly not accountants.  If all Payee's were

also required to be accountants that would certainly AID in substantiating the belief of the Court "that the

SSA Defendants most likely also hold the records, because a professional accountant could be required to

keep the records in duplicate on carbonless paper and deliver that duplicate quarterly to the SSA but the

absolute TRUTH IS 1.) that regulation DOES NOT EXIST, and 2.) AND MUCH MORE IMPORTANTLY

SUCH RECORDS WHATEVER THE COURT MAY BELIEVE THEM TO BE ARE ACTUALLY *SEE EXHIBIT*

CREATED BY THE PAYEE DEFENDANTS THE SSA HAS ABSOLUTELY NO INDEPENDENT

VERIFICATION OF THESE RECORDS FROM ANY PAYEE NATIONWIDE, THE RANK TRUTH IS

THAT A PAYEE CAN CREATE ANY RECORD THAT THEY WANT TO CREATE AND SUBMIT IT

WHETHER OR NOT IT HAS ANY ABSOLUTE CONNECTION TO REALITY.  PLAINTIFFS

DEMANDS THEREFORE THAT THE COURT SEIZE ALL HER RECORDS AT THE EXACT SAME

TIME OF THE UNITED STATES MARSHALS SERVICE OF THE SUMMONS, THIS IS THE ONLY

METHOD AND THIS COURT IS THE ONLY VENUE THAT PLAINTIFF HAS TO RECEIVE THAT

That is the very reason why the Court MUST SEIZE the records of Plaintiff AT THE EXACT SAME

TIME THAT THE COURT SERVES.  MOREOVER THE COURT IS THE ONLY VENUE IN THE

Page 2 – Peter D. Spencer *PLAINTIFF'S EXHIBIT #2*

Since 1981, the representative payee has provided services to SSA beneficiaries who receive payments under the OASDI and SSI programs. In 1993, the representative payee we reviewed established the Conservatorship and Resources for the Elderly, Inc., which provides conservatorship, guardianship, trust management, probate administration, and fiduciary services to incapacitated individuals. From July 1, 2005 to June 30, 2006, the representative payee received $482,485 in Social Security benefits for 56 beneficiaries.

## RESULTS OF REVIEW

Generally, the representative payee (1) had effective safeguards over the receipt and disbursement of Social Security benefits and (2) ensured Social Security benefits were used in accordance with SSA's policies and procedures. Except for the items noted below, the representative payee maintained sufficient records of benefit receipts, disbursements, and conserved fund balances for the 56 beneficiaries in her care. Specifically, we found the representative payee

- did not complete a Representative Payee Application for 3 beneficiaries;

- did not maintain adequate documentation to fully support 1 or more expenditures for 16 beneficiaries;

- did not report special needs trusts[4] (SNT) and/or life insurance funded burial contracts[5] (LIFBC) to SSA for 8 beneficiaries;

- incorrectly reported the conserved fund balances on the Representative Payee Reports (RPR) for 5 beneficiaries;

- did not return conserved funds to SSA for 2 beneficiaries who were no longer in its care;

- did not maintain accounting records for 1 beneficiary; and

- charged telephone calls and/or case management fees for 14 beneficiaries.

_(handwritten annotations: "THAT IS 90 THAT 32", "FAILURE RATE", "THAT IS 100% FAILURE RATE!", "FOR THAT PERSON!")_

---

[4] An SNT is a trust established under Section 1917(d)(4)(A) of the *Act* that (1) contains the assets of an disabled individual under age 65; (2) is established for the benefit of such individual by a parent, grandparent, legal guardian, or court on or after January 1, 2000; and (3) provides for the State to receive all amounts remaining in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State Medicaid plan.

[5] An LIFBC involves an individual purchasing a life insurance policy on his or her life and then assigning, revocably or irrevocably, either the proceeds or ownership of the policy to a third party (generally a funeral provider) to fund a burial contract.

UNITED STATES WHERE A VICTIM OF A FEDERAL CRIME CAN REPORT THAT CRIME AND EXPECT PROTECTION, "whistleblowers" legislation clearly indicates that the Legislative Intent of Congress was to PROTECT those who will at great courage and personal endangerment will still come forward and report FEDERAL CRIME. Plaintiff stated that it might be unlikely that the SSA defendants were intimately involved but their agents and assigns are intimately involved.

Finally, the Plaintiff needs to point out an extreme typographical error: while there are many typographical errors in the entire Complaint and 2 Exparte Motions, the most egregious typographical error is in the Complaint on page number 6 of 14 in section VII at line number 12 where the capitalized word "abdominal" should read "ABOMINABLE"!

Therefore, this Honorable Court MUST reconsider and **GRANT**, Plaintiff's *Application to Proceed In Forma Pauperis*, and further, MUST reconsider and **GRANT** all the Emergency Relief requested including but not limited to: **ORDERING** the TRANSFER of Plaintiff's SSI Payments to another PAYEE, **ORDERING** the IMMEDIATE SEIZURE of all Defendants casefiles, or at the very least all the casefiles involving the Plaintiff AT THE EXACT SAME TIME AS THE U.S. MARSHALS SERVICE DELIVERS THIS CIVIL LAWSUIT, AND **ORDERING** AT THE EXACT SAME TIME AS THE U.S. MARSHALS SERVICE DELIVERS THIS CIVIL LAWSUIT, AT A VERY NEAR DAY AND DATE OF THE COURT'S PREFERENCE IN THE VERY NEAR FUTURE ALL DEFENDANTS TO AN IMMEDIATE PRELIMINARY HEARING AT A PREDETERMINED AND SCHEDULED DATE OF THIS COURT'S CHOOSING, AND **ORDERING** THE PLAINTIFF AN ATTORNEY AT OR AT THE VERY LEAST A *COURT APPOINTED SPECIAL ADVOCATE* WHO CAN PRELIMINARILY SPEAK FOR THE PLAINTIFF AT HEARING IN WHICH EITHER THE COURT APPOINTED ATTORNEY OR SPECIAL ADVOCATE MUST SPEAK FOR PLAINTIFF BECAUSE PLAINTIFF IS WHOLLY INCAPABLE OF VERBALLY OR MENTALLY DEFENDING HERSELF AGAINST THE DEFENDANTS OR TO BE IN CONFORMITY WITH

THE LEGAL REQUIREMENTS OF THIS COURT AS PLAINTIFF IS NOW SUBMITTED ON THESE PAPERS. Therefore then the Innocent Plaintiff **MOVES, THAT** The Court **ORDER** it's Court Clerk to photocopy this and all previous filings in this case and ALL OF THE ABOVE REQUESTED ORDERS FROM THIS COURT and deliver them in their entirety to the United States Marshals IMMEDIATELY and then ORDER THE U.S. MARSHALS **CONFISCATE** ALL FILES FROM THE DEFENDANTS AND SERVE THE DEFENDANTS WITH ALL OF THE ABOVE, AND HOLD A SUA SPONTE PRELIMINARY HEARING AT WHICH ONLY DEFENDANTS NEED TO TRY AND EXPLAIN WHY THEY HAVE NOT PAID PLAINTIFF'S RENT FOR 15 CONSECUTIVE MONTHS AND WHY THEY HAVE UPON LEANING OF THEIR "ERROR" NOT IMMEDIATELY CORRECTED THE ERROR AND PAID THE BACKRENT AND THEREBY PRESERVED, PROTECTED, AND DEFENDED THE INNOCENT PLAINTIFF IN HER HOME AND SINCE THEY HAVE NOT DONE SO WHY THEIR COVERUP OF THEIR SO CALLED ERRORS OF NOT PAYING THE BACKRENT AND CURRENT RENT IS NOT A FRAUD!  AND after the Defendants have had an opportunity to explain and justify their frauds upon the Plaintiff to this Court:  **RULE IN THE PLAINTIFF'S FAVOR AND RESTORE PLAINTIFF TO HER LIFELONG HOME,** AS PLAINTIFF IS HEREBY SUBMITTED UPON THESE PAPERS FOR PRELIMINARY HEARING, AND FINALLY WHEN THE COURT TRULY ASCERTAINS THE EXTENT OF THE FRAUDS OF THE DEFENDANTS AND HOW THEY HAVE DEFRAUDED HER OUT OF HER LIFELONG HOME, WITHIN 20 DAYS RESTORE PLAINTIFF TO HER RIGHTFUL HOME, OR THROUGH PROPER NEGOTIATIONS WITH THE SFHA DEFENDANTS INTO A CLEARLY BETTER HOME IN A SAFER BUILDING IN A BETTER LOCATION! **OR IN THE ALTERNATIVE APPOINT AN ATTORNEY TO PROTECT THE PLAINTIFF IMMEDIATELY AS THE PLAINTIFF SO MOVED ON MAY 12TH, 2008 AND THE COURT HAS NOT RULED UPON!** Respectfully submitted:  Signed, Sworn, AFFIRMED, and Dated in San Francisco, California on this Wednesday, the 21st day of May, 2008

BY: _____Sophia Wong, Plaintiff

Therefore, this Honorable Court MUST reconsider and GRANT, Plaintiff's *Application to Proceed In Forma Pauperis*, and further, MUST reconsider and GRANT all the Emergency Relief requested including but not limited to: ORDERING the TRANSFER of Plaintiff's SSI Payments to another PAYEE, ORDERING the SEIZURE of all Defendants casefiles, or at the very least all the casefiles involving the Plaintiff AT THE EXACT SAME TIME AS THE U.S. MARSHALS SERVICE DELIVERS THIS CIVIL LAWSUIT, AND ORDERING DEFENDANTS ONLY TO AN EXPARTE PRELIMINARY HEARING AT WHICH ONLY THE DEFENDANTS NEED TO ATTEND AS PLAINTIFF IS NOW SUBMITTED ON THESE PAPERS AND WAIVES ORAL ARGUMENTS. THEN WITHIN 10 DAYS OF HAVING THE U.S. MARSHALS SERVE THE DEFENDANTS WITH ALL OF THE ABOVE, HOLD A SUA SPONTE EXPARTE PRELIMINARY HEARING AT WHICH ONLY DEFENDANTS NEED BE PRESENT TO TRY AND EXPLAIN THEIR FRAUDS TO THIS COURT AS PLAINTIFF IS HEREBY SUBMITTED UPON THESE PAPERS AND WAIVES ORAL ARGUMENTS AND FINALLY WHEN THE COURT TRULY ASCERTAINS THE EXTENT OF THE FRAUDS OF THE DEFENDANTS AND HOW THEY HAVE DEFRAUDED HER OUT OF HER LIFELONG HOME, WITHIN 20 DAYS RESTORE PLAINTIFF TO HER RIGHTFUL HOME, OR THROUGH PROPER NEGOTIATIONS WITH THE SFHA DEFENDANTS A CLEARLY BETTER HOME IN A SAFER BUILDING IN A BETTER LOCATION! OR IN THE ALTERNATIVE APPOINT AN ATTORNEY TO PROTECT THE PLAINTIFF IMMEDIATELY AS THE PLAINTIFF SO MOVED ON MAY 12TH, 2008 AND THE COURT HAS NOT RULED UPON!

Respectfully submitted: Signed, Sworn, AFFIRMED, and Dated in San Francisco, California on this

Wednesday, the 21st day of May, 2008   BY: _Sophia Wong_   Sophia Wong, Plaintiff

1    Sophia Wong, Plaintiff, being irreparably harmed by homelessness, DIRECTLY CAUSED BY DEFENDANTS so Mailing Address only
     is:  1230 Market Street, #731, San Francisco, California  94102

2

3                              UNITED STATES DISTRICT COURT

4                              NORTHERN DISTRICT OF CALIFORNIA

5    Sophia Wong, Plaintiff,                    Case No.: C–08–02432 SBA
                    Vs.
     *(Notation: Defendants #3 thru #30 inclusive are all sued in both*
6    *their private individual capacities and in their official public*    **PLAINTIFF'S *FIRST* AMENDED VERIFIED**
     *capacities and additionally they are all sued as duly authorized*    **COMPLAINT**
7    *agents of Defendant Number 1.) Michael J. Astrue.}*

8    1.) Michael J. Astrue, Commissioner, of Social Security           *WITH DUE JUDICIAL NOTICE:*
     Administration, (hereinafter "SSA")                               *PLAINTIFF ALSO NOW ADDS 42 U.S.C. §*
     In care of:  The United States Attorney's offices, Social
9    Security Fraud Division,450 Golden Gate, San Francisco,           *1981;* **AND 28 U.S.C. § 1988; AND 28 U.S.C. §**
     California 94102; AND Office of the Attorney General –            **1343 to Jurisdiction:**
10   Attention Social Security Disputes /Payee Fraud Division,
     U.S. Department of Justice, 950 Pennsylvania Avenue,
11   NW, Washington, District of Columbia 20530–0001;                  **JURISDICTION PURSUANT TO:  THE**
     2.) Conard House, Inc., SSA affiliate member of                   **SOCIAL SECURITY ACT: 42 U.S.C. § 902(a)5;**
12   representative payment program, main offices:  1385               **AND 42 U.S.C. § 1383 (a)2; AND 42 U.S.C. §**
     Mission Street, Suite 200, San Francisco, California              **1383 (d)(1),** *inter alia,* **AND 20 CFR PART 416**
13   94103; known named Defendants listed below:                       **SSI; SUBPART F – Representative Payment §§**
     3.) Richard Heasley, address above in #2;                         **416.601 TO 416.665 inclusive, especially enforce**
14   4.) Mark L. Bennett, address above in #2;                         **§416.641; §416.665; and §416.650,** *inter alia;*
     5.) Seth Katzmann, address above in #2;                           **AND THE EQUAL ACCESS TO JUSTICE**
15   6.) Carol Kassler, address above in #2;                           **ACT: 5 U.S.C § 504; AND 5 U.S.C. § 554,** *inter*
     7.) Carol Vullmahn, address above in #2;                          *alia;* **AND FOR THE CIVIL RIGHTS**
16   8.) Supervisor of Conard House, Inc., at branch office            **INFRINGEMENTS AND ABUSES PORTIONS**
     location at 160 Ninth Street Offices, San Francisco,              **OF THIS CASE: 42 U.S.C § 1981; AND 42**
17   California  94103, a male whose name is unknown;                  **U.S.C § 1983; AND 42 U.S.C. § 1985; AND 42**
     9.) Robert, a male Employee at 160 Ninth Street Office;           **U.S.C. § 1986; AND 28 U.S.C. § 1988; AND 28**
18   10.–30.) Does, named, unknown persons employed at                 **U.S.C. § 1343,** *inter alia.*
     various Conard House, Inc. locations;
19   31.) Mirian Saez, Interim Director, San Francisco Housing
     Authority, (hereinafter SFHA and/or PHA – abbreviation
20   for Public Housing Authority) 440 Turk Street, San
     Francisco, California  94102;
21   32.) Director, The South of Market Mental Health Clinic
     760 Harrison Street, San Francisco, California 94107;
22   33.) Director, The Adult Protective Services of the City
     and County of San Francisco, 875 Stevenson St, 3rd Floor,
23   San Francisco, California  94102;
     34.–50.) DOE(S) defendants, named, unknown persons, of
24   as yet, unknown connection to this case.
               Defendants, Et. Al. *All rights reserved to*
25   *add additional Plaintiffs and additional Defendants!!*

26   <u>**VENUE AND JURISDICTION:**</u> Plaintiff seeks SUA SPONTE protection from this Court on an absolute
     emergency 24–hour basis: All crimes committed against Plaintiff occurred in San Francisco, California
27   by mostly State actors, and public and private corporation actors, but also possibly some Federal
     Government actors; only a SUA SPONTE Federal Court investigation can determine the actual events
28   **State court protection is unviable** JURISDICTION: **42U.S.C.§1981** § 1983 § 1985 § 1986; AND 28
     U.S.C. § 1988; **28 USC § 1343;** 20 CFR PART 416 SSI:  SUBPART F – Representative Payment, §§
     416.601 TO 416.665 inclusive, especially §416.641; §416.665, and §416.650; and 42U.S.C.§ 902(a)5;
     and 42 U.S.C.§1383(a)2; and 42U.S.C.§1383(d)(1), *inter alia.*

**Prima Facie facts showing absolute urgency for the Court to move SUA SPONTE:**

*PLAINTIFF'S FIRST* **AMENDED VERIFIED COMPLAINT:    PLAINTIFF** hereby incorporates **HEREIN AS IF ALL THAT INFORMATION WERE SETFORTH HEREAT:  ALL PREVIOUSLY SUBMITTED ON MAY 12ᵀᴴ, 2008 PAPERWORK AND MATERIAL IN BOTH PLAINTIFF'S    ORIGINAL    COMPLAINT,    APPLICATION    FOR    TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY HEARING, APPLICATION TO PROCEED IN FORMA PAUPERIS AND :  *SECOND* Exparte Motion for Court to APPOINT a Civil Rights Attorney Pursuant to 5 U.S.C.§§ 504;554** *inter alia.: AS IF ALL THAT INFORMATION WERE SETFORTH HEREAT:*

1.) Plaintiff INCORPORATES all the following addendums into Plaintiff's Second Exparte Motion for Court to APPOINT a Civil Rights Attorney Pursuant to 5 U.S.C. §§ 504; 554 AND 28 U.S.C. §1988 (2000) previously filed on MAY 12ᵀᴴ, 2008:  To exactly QUOTE United States District Judge Maxine M. Chesney: The Court may appoint a pro se plaintiff counsel where the plaintiff demonstrates the presence of "exceptional circumstances." See Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation and citation omitted).   This authorization from Judge Chesney is copied here from a piece of paper given Plaintiff from a friend, and it is highly applicable here! CLEARLY THIS COURT HAS NO CHOICE BUT TO FIND THAT THIS CASE HAS THE **"EXCEPTIONAL CIRCUMSTANCES" of BOTH the LIKELIHOOD** of Plaintiff to prevail on the merits ═ CERTAINLY THE DEFENDANTS HAVE NOT PAID PLAINTIFF'S RENT IN 15 AND NOW 16 CONSECUTIVE MONTHS, WHICH IS A CRIMINAL FRAUD, AND A PRIMA FACIE FACT ═ AND ALSO **Plaintiff's SEVERE mental disabilities ELIMINATES the ability of the Plaintiff to ARTICULATE HER CLAIMS** PRO SE, IN LIGHT OF THE COMPLEXITY OF THE

LEGAL ISSUES INVOLVED, WHICH THUS DEMANDS that the Court APPROVE FEE

PAYMENTS under both 5 U.S.C. §§ 504, 554; and under 28 U.S.C. § 1988 (2000) (allowing the Court

to award attorney's fees to the prevailing party in an action brought pursuant to, among others, 42

U.S.C. §§ 1983).

**ARGUMENT**:  **First** Plaintiff can easily prevail EITHER WAY, with the Court choosing to act Sua

Sponte to protect Plaintiff and investigate this case and much more easily prevail with the clear legal

abilities of any Civil Rights Attorney to properly state a claim that the Court will recognize!  **Second**

the Plaintiff, who is a severely mentally disabled individual, cannot possibly have "the ability of the

petitioner to articulate her claims pro se in light of the complexity of the legal issues involved" OR state

the proper requisite controlling legal authorities which the Court purports are absent in it's **ORDER**

**Doc.#4** and as such the Court discriminates against the Plaintiff by expecting far more than the mentally

disabled Plaintiff is at all capable of articulating; and all of which could quite easily be "properly"

articulated by a Civil Rights Attorney, - Plaintiff is currently receiving Supplemental Security Income

{SSI} Social Security Disability benefits in the form of representative payment (Payee) status payments

(see: 20 CFR 416.601 to 416.665 inclusive).  In other words, Plaintiff is mentally incapable of even

properly spending her money to pay rent and utilities; CLEARLY GIVEN THAT PRIMA FACIE

FACT THE COURT CANNOT THEREFORE CONCLUDE THAT PLAINTIFF IS CAPABLE OF

PROPERLY ARTICULATING HER CLAIMS TO THE COURT IN LIGHT OF THE COMPLEXITY

OF THE LEGAL ISSUES INVOLVED.  Plaintiff therefore is obviously an appropriate candidate for

receiving at minimum a Court ORDER GRANTING receiving SSI disability payments through A DIFFERENT

Defendants Conard House, Inc., et. al.  Plaintiff is being criminally defrauded by the Defendants and

cannot defend herself thus, this Court MUST either act immediately, Sua Sponte to protect her OR

APPOINT FEE PAYMENT AND A CIVIL RIGHTS ATTORNEY TO PROTECT PLAINTIFF; OR

AT ABSOLUTE MINIMUM ORDER THE APPOINTMENT OF A COURT APPOINTED SPECIAL

ADVOCATE {CASA} (as is occasionally done for minors in the Court system) with strict instructions to protect Plaintiff, who has suffered an unconstitutional taking of her Federal government supplied disability payments! **Moreover THE COURT CANNOT REFUSE TO APPOINT AN ATTORNEY OR AT LEAST APPROVE A full fee payment under 5 USC §§ 504 AND 554 AND 28 U.S.C. § 1988 and then DENY THE CLAIMS OF THE PLAINTIFF ON ANY TECHNICAL GROUNDS BECAUSE THOSE GROUNDS COULD EASILY HAVE BEEN CURED THROUGH THE APPOINTMENT OF AN ATTORNEY OR AT LEAST APPROVAL OF A FEE UNDER THE EQUAL ACCESS TO JUSTICE ACT!** Thus pursuant to 5 USC §§ 504; 554 AND 28 U.S.C. 1988 inter alia., Plaintiff demands EITHER ALL THE RELIEF REQUESTED OF THE COURT SUA SPONTE; OR IN THE ALTERNATIVE APPOINTMENT OF A CIVIL RIGHTS ATTORNEY OR AT ABSOLUTE MINIMUM, THE APPROVAL OF THE COURT TO PAY THE FEES OF A CIVIL RIGHTS ATTORNEY UNDER THE EQUAL ACCESS TO JUSTICE ACT AND UNDER 28 U.S.C. § 1988 (2000) (allowing the Court to award attorney's fees to the prevailing party in an action brought pursuant to, among others, 42 U.S.C. §§ 1983).

### Plaintiff's FOURTH EXPARTE MOTION: MOTION FOR RECONSIDERATION: OF BOTH ORDERS DOC #3 AND DOC #4.

1.) Plaintiff believes that the Court should be given an opportunity to correct it's unusual errors! Plaintiff realizes the Court is extremely busy and thus in a hurry, and so The Court must have in haste just quite simply OVERLOOKED the clear fact that **ALL DOCUMENTS ARE PROPERLY SIGNED, including but not limited to the Plaintiff's APPLICATION to PROCEED In Forma Pauperis (IFP).** THE CLERK OF THE COURT HAS CLEAR STANDING ORDERS FROM ALL JUDGES TO NOT ACCEPT ANY UNSIGNED DOCUMENTS!!! Therefore, The Court is in significant error when The Court alleges in "ORDER [Docket No. 3]" at Page Number 4 in line Number 5 that somehow the clearly unusual step of DENYING Plaintiff IFP status is because, "The Court has reviewed Wong's Application and found it

unsigned." Plaintiffs respectfully suggests that the Court LOOK AGAIN as BOTH the Court ORIGINAL and the Court Courtesy Copy ARE SIGNED. Almost certainly the Court's Clerk is the one who quickly reviewed the IFP and reported it unsigned to the Court; all that needs to be done is for the Court to look again at page number 4 of the IFP Application!

Now, if the Court looks again at page number 4 of the Application for IFP, clearly, so that the Court could not possibly misunderstand the Plaintiff stated ONLY ON THE IFP that before the Paperwork was served upon the Defendants that the Court must ORDER her Payee case TRANSFERRED to a DIFFERENT PAYEE. ***This is CLEARLY to PROTECT the Innocent Plaintiff!*** The piece of paper making this entirely reasonable request is attached with 2 staples in the upper left corner and a very tiny ¼ inch piece of clear tape to page 4 of the IFP inorder to hold it in place, so that the Court could not possibly ignore the NEED TO PROTECT THE INNOCENT MENTALLY DISABLED PLAINTIFF FROM THE DEFENDANTS BEFORE THIS COURT PROCESS EVER BEGINS simple request, so instead the Court or it's clerk chose to ignore the signature! This piece of paper is attached to the irrelevant question #10 and Plaintiff admits that is obscures MOST BUT NOT ALL of the signature, but all that the Court would need to do is just simply touch the piece of paper in any manner and it would move aside to REVEAL THE SIGNATURE!! This simple tiny additional piece of paper INSERTED ONTO THE PREPRINTED COURT FORM request from the Plaintiff IS CLEARLY SO THAT THE COURT KNOWS BEYOND ANY POSSIBILITY OF A DOUBT THAT IT MUST ORDER PLAINTIFF TO A DIFFERENT PAYEE! BEFORE IT BEGINS ANY OTHER PROCESS because once the paperwork is served upon the Defendants THEY WILL ABUSE Plaintiff through the ABSOLUTE TOTAL power they have over her monies. Does the Court FAIL TO UNDERSTAND THAT THE DEFENDANTS HAVE NOT PAID HER RENT IN 15 MONTHS!!??!! So if the Court CLEARLY UNDERSTANDS THAT FRAUD HOW CAN IT NOT UNDERSTAND THAT A DEFENDANT SO CRAVEN AS TO DEFRAUD THE PLAINTIFF OUT OF OBVIOUS RENT PAYMENTS INORDER TO CAUSE HER EVICTION WOULD ALSO BE

CRAVEN ENOUGH TO SEVERELY MENTALLY AND PHYSICALLY ABUSE THE PLAINTIFF
AFTER IT LEARNS OF THIS LAWSUIT THROUGH IN FORMA PAUPERIS SERVICE BY THE
UNITED STATES MARSHALS AND FURTHER TO DESTROY OR ALTER ALL EVIDENCE IN
THIS CASE. and Sworn as true and thus Plaintiff would be under threat of Perjury of not true. Plaintiff
CLEARLY asserted, not alleged that us Plaintiff submits the followingreminds this Court THAT THESE
ARE CRIMES COMMITTED AGAINST PLAINTIFF NOT JUST mere bad acts. Plaintiff reminds this
Court that Plaintiff is a severely mentally disabled individual who is a member of a specially protected class
who must be preserved by this Court.

2.) Plaintiff reminds the Court that Plaintiff stated on Page ONE of BOTH the Complaint and the two
exparte motions that STATE COURT ACTION IS UNVIABLE! No matter how far sweeping either
Caifornia Superior Court or California APPELATE COURT power might be, it is IMPOSSIBLE for
STATE court to seize the files of an agent of the Federal Government. Defendants Numbered 2 thru #30
are agents of the Federal Government. Even if the State Courts – either Superior or Appellate were to
wrongly construe Defendants #2 thru #30 as PRIVATE actors in a private Corparation, the State Court
COULD NEVER SEIZE the records of anyone IN AN UNLAWFUL DETRAINER ACTION! The
California STATE Courts – either Superior or Appellate LACK THE POWER AND LACK THE
JURISDICTION TO SEIZE THE VERY FILES THAT PROTECT AND PROVE PLAINTIFF'S CASE
Plaintiff immediately MOVES that the Court ORDER this case be REASSIGNED to a SAN FRANCISCO
JUDGE, the Plaintiff lives in SAN FRANCISCO; the Plaintiff does NOT LIVE IN OAKLAND
CALIFORNIA, and cannot possibly travel to Oakland California, does not understand why this case was
assigned to an Oakland California Judge and immediately MOVES that the Court ORDER this case be
REASSIGNED to a SAN FRANCISCO JUDGE, the Plaintiff lives in SAN FRANCISCO.

By far the most significant error that the Court makes is located in ORDER Docket No. 4 Page Number 6

Line numbers 26 and 27 wherein the Court states:  When such records are most likely also held by the

SSA"; the Clear fact is that Defendant Number 1 the SSA is so woefully inadequate in it's supervision of

this program that NOT ONLY DOES IT NOT KEEP IT'S OWN RECORDS OF WHAT THE PAYEE *SEE EXHIBI*

SPENDS BUT IT DOES NOT EVEN ADEQUATELY REQUIRE THE PAYEE TO KEEP THOSE

RECORDS!  This is because most Payee's are friends or family members, common ordinary citizens who

at the very least are "non–professionals" in most fields, and certainly not accountants.  If all Payee's were

also required to be accountants that would certainly AID in substantiating the belief of the Court "that the

SSA Defendants most likely also hold the records, because a professional accountant could be required to

keep the records in duplicate on carbonless paper and deliver that duplicate quarterly to the SSA but the

absolute TRUTH IS 1.) that regulation DOES NOT EXIST, and 2.) AND MUCH MORE IMPORTANTLY

SUCH RECORDS WHATEVER THE COURT MAY BELIEVE THEM TO BE ARE ACTUALLY

CREATED BY THE PAYEE DEFENDANTS THE SSA HAS ABSOLUTELY NO INDEPENDENT *SEE EXHIBIT*

VERIFICATION OF THESE RECORDS FROM ANY PAYEE NATIONWIDE, THE RANK TRUTH IS

THAT A PAYEE CAN CREATE ANY RECORD THAT THEY WANT TO CREATE AND SUBMIT IT

WHETHER OR NOT IT HAS ANY ABSOLUTE CONNECTION TO REALITY.  PLAINTIFFS

DEMANDS THEREFORE THAT THE COURT SEIZE ALL HER RECORDS AT THE EXACT SAME

TIME OF THE UNITED STATES MARSHALS SERVICE OF THE SUMMONS, THIS IS THE ONLY

METHOD AND THIS COURT IS THE ONLY VENUE THAT PLAINTIFF HAS TO RECEIVE THAT

That is the very reason why the Court MUST SEIZE the records of Plaintiff AT THE EXACT SAME

TIME THAT THE COURT SERVES.  MOREOVER THE COURT IS THE ONLY VENUE IN THE

UNITED STATES WHERE A VICTIM OF A FEDERAL CRIME CAN REPORT THAT CRIME AND

EXPECT PROTECTION, "whistleblowers" legislation clearly indicates that the Legislative Intent of

Congress was to PROTECT those who will at great courage and personal endangerment will still come

forward and report FEDERAL CRIME.  Plaintiff stated that it might be unlikely that the SSA defendants were intimately involved but their agents and assigns are intimately involved.

Finally, the Plaintiff needs to point out an extreme typographical error:  while there are many typographical errors in the entire Complaint and 2 Exparte Motions, the most egregious typographical error is in the Complaint on page number 6 of 14 in section VII at line number 12 where the capitalized word "abdominal" should read "ABOMINABLE"!

edeconsiderb currently receiving Social Security disability payments – this is not a dispute of Social Security disability status.

3.) Plaintiff has lived her entire lifetime, 38 years, at the same, 1560 square–foot apartment owned by the San Francisco Housing Authority (hereinafter abbreviated as either SFHA or PHA – the standard abbreviation for Public Housing Authority).  4.–5.) Plaintiff pays $247 per month rent and lives alone.

6.) Plaintiff is currently being wrongfully evicted from her lifetime home for non–payment of rent for now 15 consecutive months!

7.) Plaintiff is not mentally cognizant of this fact of eviction, or the facts and ramifications thereof.  Plaintiff just thinks "they are forcing her to move."

**8.) Plaintiff has a Social Security Representative Payment "PAYEE" who has fraudulently with intentional malice refused to pay the $247.00 monthly rent to the SFHA for now 15 consecutive months.  {Technically making defendant SFHA also a victim in this matter.}**

9.) "Payee Defendants" are numbered 2 through 30 Conard House Inc., and it's numerous employees of same, all sued in both their individual and official capacities.  Payee Defendants are all acting **UNDER COLOR OF LAW** as duly authorized representative of, and agent for, Defendant number1 the Social Security Administration, which has always woefully failed in properly administrating the Representative Payment System of which this case is just a most recent glaring example.

Therefore then the Innocent Plaintiff **MOVES, THAT** The Court **ORDER** it's Court Clerk to photocopy this and all previous filings in this case and ALL OF THE ABOVE REQUESTED ORDERS FROM THIS COURT and deliver them in their entirety to the United States Marshals IMMEDIATELY and then ORDER THE U.S. MARSHALS **CONFISCATE** ALL FILES FROM THE DEFENDANTS AND SERVE THE DEFENDANTS WITH ALL OF THE ABOVE, AND HOLD A SUA SPONTE PRELIMINARY HEARING AT WHICH ONLY DEFENDANTS NEED TO TRY AND EXPLAIN WHY THEY HAVE NOT PAID PLAINTIFF'S RENT FOR 1 CONSECUTIVE MONTHS AND WHY THEY HAVE UPON LEARNING OF THEIR "ERROR" NOT IMMEDIATELY CORRECTED THE ERROR AND PAID THE BACKRENT AND THEREBY PRESERVED, PROTECTED, AND DEFENDED THE INNOCENT PLAINTIFF IN HER HOME AND SINCE THEY HAVE NOT DONE SO WHY THEIR COVERUP OF THEIR SO CALLED ERRORS OF NOT PAYING THE BACKRENT AND CURRENT RENT IS NOT A FRAUD!

AND after the Defendants have had an opportunity to explain and justify their frauds upon the Plaintiff to this Court: **RULE IN THE PLAINTIFF'S FAVOR AND RESTORE PLAINTIFF TO HER LIFELONG HOME,** AS PLAINTIFF IS HEREBY SUBMITTED UPON THESE PAPERS FOR PRELIMINARY HEARING, AND FINALLY WHEN THE COURT TRULY ASCERTAINS THE EXTENT OF THE FRAUDS OF THE DEFENDANTS AND HOW THEY HAVE DEFRAUDED HER OUT OF HER LIFELONG HOME, WITHIN 20 DAYS RESTORE PLAINTIFF TO HER RIGHTFUL HOME, OR THROUGH PROPER NEGOTIATIONS WITH THE SFHA DEFENDANTS INTO A CLEARLY BETTER HOME IN A SAFER BUILDING IN A BETTER LOCATION! ~~OR IN THE ALTERNATIVE APPOINT AN ATTORNEY TO PROTECT THE PLAINTIFF IMMEDIATELY AS THE PLAINTIFF SO MOVED ON MAY 12TH, 2008 AND THE COURT HAS NOT~~ correctly ~~RULED UPON!~~ Respectfully submitted: Signed, Sworn, AFFIRMED, and Dated in San Francisco, California on this Wednesday, the 21st day of May, 2008      BY:

_____ Sophia Wong, Plaintiff

# OFFICE OF
# THE INSPECTOR GENERAL

## SOCIAL SECURITY ADMINISTRATION

### AN INDIVIDUAL REPRESENTATIVE
### PAYEE FOR THE SOCIAL SECURITY
### ADMINISTRATION IN THE
### SAN FRANCISCO REGION

**July 2007          A-09-07-17063**

# AUDIT REPORT



## Mission

By conducting independent and objective audits, evaluations and investigations, we inspire public confidence in the integrity and security of SSA's programs and operations and protect them against fraud, waste and abuse. We provide timely, useful and reliable information and advice to Administration officials, Congress and the public.

## Authority

The Inspector General Act created independent audit and investigative units, called the Office of Inspector General (OIG). The mission of the OIG, as spelled out in the Act, is to:

- O  Conduct and supervise independent and objective audits and investigations relating to agency programs and operations.
- O  Promote economy, effectiveness, and efficiency within the agency.
- O  Prevent and detect fraud, waste, and abuse in agency programs and operations.
- O  Review and make recommendations regarding existing and proposed legislation and regulations relating to agency programs and operations.
- O  Keep the agency head and the Congress fully and currently informed of problems in agency programs and operations.

To ensure objectivity, the IG Act empowers the IG with:

- O  Independence to determine what reviews to perform.
- O  Access to all information necessary for the reviews.
- O  Authority to publish findings and recommendations based on the reviews.

## Vision

We strive for continual improvement in SSA's programs, operations and management by proactively seeking new ways to prevent and deter fraud, waste and abuse. We commit to integrity and excellence by supporting an environment that provides a valuable public service while encouraging employee development and retention and fostering diversity and innovation.



## SOCIAL SECURITY

MEMORANDUM

Date:   July 3, 2007                                          Refer To:

To:     Peter D. Spencer
        Regional Commissioner
         San Francisco

From:   Inspector General

Subject: An Individual Representative Payee for the Social Security Administration in the
        San Francisco Region (A-09-07-17063)

### OBJECTIVE

Our objectives were to determine whether the representative payee (1) had effective
safeguards over the receipt and disbursement of Social Security benefits and
(2) ensured Social Security benefits were used and accounted for in accordance
with the Social Security Administration's (SSA) policies and procedures.

### BACKGROUND

Some individuals cannot manage or direct the management of their finances because of
their youth or mental and/or physical impairments. Congress granted SSA the authority
to appoint representative payees to receive and manage these beneficiaries'[1]
payments.[2] A representative payee may be an individual or an organization. SSA
selects representative payees for Old-Age, Survivors and Disability Insurance (OASDI)
beneficiaries or Supplemental Security Income (SSI) recipients when representative
payments would serve the individuals' interests. Representative payees are responsible
for managing benefits[3] in the best interest of the beneficiary. Refer to Appendix B for
additional representative payee responsibilities.

---

[1] We use the term "beneficiary" generically in this report to refer to both OASDI beneficiaries and SSI
recipients.

[2] *Social Security Act* (Act) §§ 205(j) and 1631(a)(2), 42 U.S.C. §§ 405(j) and 1383(a)(2).

[3] We use the term "benefits" generically in this report to refer to both OASDI benefits and SSI payments.

Page 2 – Peter D. Spencer

Since 1981, the representative payee has provided services to SSA beneficiaries who receive payments under the OASDI and SSI programs. In 1993, the representative payee we reviewed established the Conservatorship and Resources for the Elderly, Inc., which provides conservatorship, guardianship, trust management, probate administration, and fiduciary services to incapacitated individuals. From July 1, 2005 to June 30, 2006, the representative payee received $482,485 in Social Security benefits for 56 beneficiaries.

## RESULTS OF REVIEW

Generally, the representative payee (1) had effective safeguards over the receipt and disbursement of Social Security benefits and (2) ensured Social Security benefits were used in accordance with SSA's policies and procedures. Except for the items noted below, the representative payee maintained sufficient records of benefit receipts, disbursements, and conserved fund balances for the 56 beneficiaries in her care. Specifically, we found the representative payee

- did not complete a Representative Payee Application for 3 beneficiaries;

- did not maintain adequate documentation to fully support 1 or more expenditures for 16 beneficiaries;

- did not report special needs trusts[4] (SNT) and/or life insurance funded burial contracts[5] (LIFBC) to SSA for 8 beneficiaries;

- incorrectly reported the conserved fund balances on the Representative Payee Reports (RPR) for 5 beneficiaries;

- did not return conserved funds to SSA for 2 beneficiaries who were no longer in its care;

- did not maintain accounting records for 1 beneficiary; and

- charged telephone calls and/or case management fees for 14 beneficiaries.

---

[4] An SNT is a trust established under Section 1917(d)(4)(A) of the *Act* that (1) contains the assets of an disabled individual under age 65; (2) is established for the benefit of such individual by a parent, grandparent, legal guardian, or court on or after January 1, 2000; and (3) provides for the State to receive all amounts remaining in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State Medicaid plan.

[5] An LIFBC involves an individual purchasing a life insurance policy on his or her life and then assigning, revocably or irrevocably, either the proceeds or ownership of the policy to a third party (generally a funeral provider) to fund a burial contract.

Page 3 – Peter D. Spencer

## COMPLETION OF REPRESENTATIVE PAYEE APPLICATIONS

The representative payee did not complete a Representative Payee Application for three beneficiaries in its care. The representative payee assumed responsibility for the care of these beneficiaries after their previous representative payee died. SSA was unaware that two of the three beneficiaries were in the representative payee's care. From July 1, 2005 to June 30, 2006, these beneficiaries received $30,462 in Social Security benefits. However, neither the representative payee nor SSA could locate a Representative Payee Application for these beneficiaries. As a result, SSA was unaware of the actual number of beneficiaries and amount of Social Security benefits the representative payee had managed.

SSA's procedures require that a representative payee complete an application to receive benefits on a beneficiary's behalf. SSA uses the information on the application to evaluate the applicant's qualifications and suitability to serve as a representative payee.[6]

The representative payee had acted as conservator for these beneficiaries because the previous representative payee was terminally ill and died in October 2003. However, according to SSA's Representative Payee System (RPS), two beneficiaries were still in the previous representative payee's care. The remaining beneficiary had not been entered into RPS. The representative payee stated that a Representative Payee Application was not completed after the previous representative payee's death. Without such information, SSA is unable to make an informed decision about the representative payee's qualifications and suitability. During our audit, the representative payee initiated action to submit Representative Payee Applications for these beneficiaries.

## SUPPORTING DOCUMENTATION FOR EXPENDITURES

The representative payee did not maintain adequate documentation to fully support 1 or more expenditures for 16 beneficiaries. In some instances, the supporting documentation was not obtained or retained. The representative payee believed that such information may have been misfiled. In other instances, the supporting documentation was altered and did not always reconcile to the check amount. As a result, we were unable to determine the reasonableness of 54 checks for $34,033 in expenditures.

SSA's procedures state that representative payees are responsible for keeping detailed and accurate records of how benefits are used.[7] SSA's procedures also require that representative payees use the benefits they receive to meet the beneficiary's needs

---

[6] SSA, Program Operations Manual System (POMS) GN 00502.107.A.

[7] SSA, POMS GN 00502.113.D.1.

Page 4 – Peter D. Spencer

and best interests.  Representative payees are responsible for keeping records and reporting on the use of benefits.[8]

For 16 beneficiaries, we identified 54 checks, totaling $34,033, without sufficient documentation to fully support payments to vendors, employees, and family members for such items as room and board, transportation, clothing, cigarettes, and hygiene supplies.  Of this amount, the representative payee issued 27 checks, totaling $29,350, to a room and board facility it owned.  The representative payee did not maintain documentation of the rent amounts for the four beneficiaries who lived at the facility.  The facility manager (a member of the representative payee's family) stated that rent agreements were not prepared and monthly rates were based on what each beneficiary could afford to pay.

The representative payee also issued four checks, totaling $1,145, to another family member for property clean-up and transportation services.  However, we found the representative payee had adjusted the amount requested for payment on the "Manual Check Request Form" without additional explanation or justification for the adjustment.  In these instances, the amount of the check was higher than the family member initially requested.

## SPECIAL NEEDS TRUSTS AND LIFE INSURANCE FUNDED BURIAL CONTRACTS

The representative payee did not report SNTs and/or LIFBCs to SSA for eight recipients.  The representative payee believed it was not necessary to notify SSA about the establishment of SNTs and LIFBCs for its recipients because these items were exempt from SSI resource limits.  We found that SSA was unaware of two recipients with SNTs, four recipients with LIFBCs, and two recipients with both SNTs and LIFBCs.  Without such information, SSA cannot determine whether these recipients are still eligible for SSI payments.

SSA's procedures state that recipients or their representative payees must promptly report any changes that can affect SSI payments.[9]  Property held in a trust may or may not be considered a resource for SSI purposes based, in part, on the type of trust, who established it, and when it was established.  SSA must review the trust document and determine the nature and value of trust property to evaluate its resource status.[10]  An SNT that meets certain requirements may qualify as one of the exceptions to the general rule of counting trusts as income and resources.[11]

---

[8]  SSA, POMS GN 00605.001.

[9]  SSA, POMS SI 02301.005.

[10]  SSA, POMS SI 01120.200.

[11]  SSA, POMS SI 01120.203.

Page 5 – Peter D. Spencer

In addition, SSA must review the life insurance policy and determine whether its proceeds or ownership have been assigned to evaluate its resource status. When the assignment of proceeds or ownership of an LIFBC is revocable, the resource value of the burial contract is equal to the cash surrender value of the life insurance policy, subject to the $1,500 burial funds exclusion. If the assignment is irrevocable, the life insurance policy and burial contract are not resources for SSI purposes because the recipient no longer owns them.[12]

Based on our review, we believe the SNTs and/or LIFBCs for some recipients may affect their SSI eligibility. In December 2006, we referred the SNTs to the San Francisco Regional Office for appropriate action. In March 2007, we referred the LIFBCs to the Redlands Field Office for review. Because of the complexity of SNTs and LIFBCs, it is important that SSA review these items to determine whether they should be counted as a resource for SSI purposes.

## ACCURACY OF REPRESENTATIVE PAYEE REPORTS

The representative payee incorrectly reported the conserved fund balances on the RPRs for five recipients. This occurred because the representative payee used a formula to estimate the use of Social Security benefits on the RPRs for its recipients. For eight recipients who received only SSI payments from July 1, 2005 to June 30, 2006, we compared the estimated use of benefits on their most recent RPRs to the actual use of benefits per the accounting records. The representative payee reported no conserved funds for these recipients. However, we determined that five of these recipients had $3,349 in conserved funds.

SSA's procedures state that a representative payee's duties include keeping detailed and accurate records of how benefits are used to provide an accurate report to SSA when requested.[13] The RPR assists SSA in determining the use of benefits during the preceding 12-month reporting period, the representative payee's continuing suitability, and the beneficiary's need for representative payment.[14]

For each reporting period, the representative payee allocates 70 percent of Social Security benefits paid toward food and housing and 30 percent toward clothing, dental, medical, and recreation expenses. This formula eliminated any conserved fund balances and was applied without regard to actual expenditures. For example, the representative payee reportedly spent the entire $18,918 received on behalf of an SSI recipient on the RPR for the period of September 1, 2005 to August 31, 2006. However, the representative payee's general ledger for the same period actually reflected an increase of $1,396 in conserved funds.

---

[12]  SSA, POMS SI 01130.425.

[13]  SSA, POMS GN 00502.113.D.1.

[14]  SSA, POMS GN 00605.001.B.

Page 6 – Peter D. Spencer

## PAYMENT OF CONSERVED FUND BALANCES

Our audit disclosed that 10 of the 56 beneficiaries left the representative payee's care from July 1, 2005 to June 30, 2006. We found the representative payee did not return conserved funds directly to SSA for two of these beneficiaries who were no longer in its care. Instead, the representative payee forwarded the conserved funds to the new representative payee. As a result, SSA was unaware that $2,387 in conserved funds had been transferred to the new representative payee.

SSA's procedures require that representative payees return any conserved funds or unused benefits to SSA to reissue funds to either a successor payee or the beneficiary.[15]

In one instance, the representative payee promptly forwarded the conserved funds at the same time the beneficiary left its care. In the other instance, the representative payee held the conserved funds for 8 months after the date of the last SSI payment. However, in both instances, the conserved funds were forwarded to the new representative payee. This occurred because the representative payee was unaware of the requirement to return conserved funds directly to SSA.

## LACK OF ACCOUNTING RECORDS

The representative payee did not maintain accounting records for one recipient. This occurred because the representative payee believed the amount of payments received by the recipient was insignificant. The recipient resided at a Medicaid facility from July 1, 2005 to June 30, 2006. The representative payee forwarded the SSI payment to the facility for 10 months and retained it for the recipient's personal needs for 2 months. However, the representative payee did not maintain accounting records or supporting receipts. As a result, the representative payee did not properly account for the receipt and disbursement of $600 in SSI payments.

SSA's procedures state that representative payees must use the benefits they receive for the current needs and best interests of the beneficiary. They are responsible for keeping records and reporting on the use of benefits.[16] Specifically, a representative payee's duties include keeping detailed and accurate records of how benefits are used to provide an accurate report to SSA when requested.[17]

The representative payee has provided care for the recipient since February 2002. The Medicaid facility maintained financial records for the receipt and disbursement of SSI payments but did not provide such information to the representative payee. According

---

[15] SSA, POMS GN 00603.055.A.

[16] SSA, POMS GN 00605.001.B.1.

[17] SSA, POMS GN 00502.113.D.1.

Page 7 – Peter D. Spencer

to the facility's records, the recipient had a conserved fund balance of $562 as of June 30, 2006. Although the recipient only received $50 per month, the conserved fund balance increased by $271 during our audit period. However, the representative payee was unaware of these conserved fund balances and did not account for the receipt and use of payments as required.

## TELEPHONE CALLS AND CASE MANAGEMENT FEES

Our audit disclosed that 22 of the 56 beneficiaries in the representative payee's care received only Social Security benefits from July 1, 2005 to June 30, 2006.[18] We found the representative payee had charged 14 of these beneficiaries for telephone calls and/or case management. This occurred because the representative payee believed it was acceptable to charge (1) telephone calls as reimbursement for "out-of-pocket" expenses incurred while serving its beneficiaries and (2) case management fees because the work was performed by an independent contractor. As a result, the representative payee was reimbursed for $235 in expenses to which it was not entitled.

SSA's procedures preclude compensating an individual out of benefits for serving as representative payee; that is, compensating a payee for his or her time and effort or administrative expenses. However, SSA's procedures allow qualified organizations to collect a fee from beneficiaries for expenses (including overhead) incurred by the organization in providing services as their representative payee.[19] Before an organization may collect a fee from a beneficiary's monthly payment, SSA must authorize it.[20] In addition, the organization—not its employees, volunteers, or other individuals—must be named the representative payee.[21]

The representative payee charged its beneficiaries semiannually for the actual cost of telephone calls plus $5 or $10 to recoup out-of-pocket expenses. We identified 11 beneficiaries who were charged for telephone calls. In many instances, the $5 or $10 charge exceeded the actual cost of the telephone calls. Although the representative payee generally waived its case management fees for beneficiaries who received only Social Security benefits, we identified one beneficiary who was charged for case management performed by an independent contractor. We also identified two beneficiaries who were charged for both telephone calls and case management. Since the representative payee is an individual, it is not authorized to receive reimbursement for its time and effort or administrative expenses.

---

[18] The remaining 34 beneficiaries received other sources of income (for example, pensions and Department of Veterans Affairs benefits) or transfers from savings or trust accounts which could have been used to pay for telephone calls and/or case management.

[19] SSA, POMS GN 00602.110.

[20] SSA, POMS GN 00506.001.B.

[21] SSA, POMS GN 00506.100.A.

Page 8 – Peter D. Spencer

## CONCLUSION AND RECOMMENDATIONS

Generally, we found the representative payee met its responsibilities to provide for the care of its beneficiaries. Nevertheless, the representative payee needs to strengthen its controls and procedures in a number of areas. We recommend that SSA ensure the representative payee:

1. Submits Representative Payee Applications for the three beneficiaries in the previous representative payee's care.

2. Retains supporting documentation for its expenditures and provides sufficient justification for any adjustments to payment amounts.

3. Reports all SNTs and LIFBCs to SSA for its review in evaluating whether these items are exempt from SSI resource limits.

4. Uses actual rather than estimated expenses to complete the RPRs for all beneficiaries in its care.

5. Returns conserved funds to SSA for any beneficiaries who are no longer in its care.

6. Maintains accounting records for the receipt and disbursement of Social Security benefits for all beneficiaries regardless of monthly benefit amount.

7. Discontinues charging telephone calls and case management fees to beneficiaries who receive only Social Security benefits.

## AGENCY COMMENTS

SSA agreed with all our recommendations. SSA also stated it would ensure the Redlands field office contacts the representative payee to review each of the issues cited in the report and provide any training needed to assist the representative payee in complying with SSA policies. See Appendix D for the full text of SSA's comments.

Patrick P. O'Carroll, Jr.

# *Appendices*

APPENDIX A – Acronyms

APPENDIX B – Representative Payee Responsibilities

APPENDIX C – Scope and Methodology

APPENDIX D – Agency Comments

APPENDIX E – OIG Contacts and Staff Acknowledgments

*Appendix A*

# Acronyms

| | |
|---|---|
| Act | *Social Security Act* |
| C.F.R. | Code of Federal Regulations |
| LIFBC | Life Insurance Funded Burial Contract |
| OASDI | Old-Age, Survivors and Disability Insurance |
| OIG | Office of the Inspector General |
| POMS | Program Operations Manual System |
| RPR | Representative Payee Report |
| RPS | Representative Payee System |
| SNT | Special Needs Trust |
| SSA | Social Security Administration |
| SSI | Supplemental Security Income |
| U.S.C. | United States Code |

# Representative Payee Responsibilities

Representative payees are responsible for using benefits to serve the beneficiary's best interests.  The responsibilities include the following.[1]

- Determine the beneficiary's current needs for day-to-day living and use his or her payments to meet those needs.

- Conserve and invest benefits not needed to meet the beneficiary's current needs.

- Maintain accounting records of how the benefits are received and used.

- Report events to the Social Security Administration (SSA) that may affect the individual's entitlement or benefit payment amount.

- Report any changes in circumstances that would affect their performance as a representative payee.

- Provide SSA an annual Representative Payee Report to account for benefits spent and invested.

- Return any payments to SSA for which the beneficiary is not entitled.

- Return conserved funds to SSA when no longer serving as the representative payee for the beneficiary.

---

[1] SSA, POMS GN 00502.113.

*Appendix C*

# Scope and Methodology

Our audit covered the period of July 1, 2005 through June 30, 2006.  To accomplish our objectives, we:

- Reviewed applicable Federal laws and regulations and Social Security Administration (SSA) policies and procedures for representative payees.

- Interviewed SSA employees at the San Francisco Regional Office and three field offices to obtain background information about the performance of the representative payee.

- Obtained from SSA's Representative Payee System (RPS) a list of individuals who were in the representative payee's care.

- Obtained from the representative payee a list of individuals who were in its care and had received Social Security benefits.

- Compared and reconciled the RPS list to the representative payee's list to identify the population of SSA beneficiaries who were in the representative payee's care from July 1, 2005 through June 30, 2006.

- Reviewed the representative payee's internal controls over the receipt and disbursement of Social Security benefits.

- Reviewed the receipt and expenditure of Social Security benefits for 56 beneficiaries from July 1, 2005 through June 30, 2006.

- Performed the following tests for the 56 beneficiaries:

  - Compared and reconciled benefit amounts received according to the representative payee's records to benefit amounts paid according to SSA's records.

  - Reviewed the representative payee's accounting records to determine whether benefits were properly spent or conserved on the beneficiary's behalf.

  - Traced a sample of recorded expenses to source documents and examined the underlying documentation for reasonableness and authenticity.

- Interviewed 10 beneficiaries to determine whether their basic needs were met.